Dundy, District Judge.
In the month of October, 1876, the treasury of Marion county was robbed of about ten thousand dollars in money, and the thieves were, for a time, successful in secreting, as they had been in securing the money. For the purpose of securing the arrest and conviction of the robbers, the county offered a respectable reward for their apprehension. Two enterprising individuals of the state of Iowa, by name, Charles B. Thompson and James E. Hetherington, after gaining such information as *513 seemed to be within reach, started in pursuit of the thieves and their plunder.
The alleged thieves were successfully followed into the interior of this state, where they were “shadowed” by their pur-surers, and where they were finally arrested by Thompson and Hetherington, who had been employed for the purpose. A portion of the stolen funds were recovered, the same having been found in the possession and on the person of one of the thieves. One of the original packages stolen contained the sum qf two thousand dollars, and was taken from the thief by his captors, before the package had been broken or opened. This package was retained by Thompson and Hetherington for a time and until it was by them delivered to this defendant. But whilst this business was progressing, the thieves, their accomplices or friends, incredible as it may seem, actually had Thompson and Hetherington arrested for robbery, the charge being for taking the stolen funds from the thieves, who had the same in possession. And, what is absolutely amazing, the magistrate before whom Thompson and Hetherington were taken, required them to give bail to answer in the district court to the charge of robbery. The bail required was fourteen or fifteen hundred dollars, and without the use of the money captured, the accused were unable to give it. At this stage of the proceedings, this defendant first appears in this serious, and what seemed to be a rather dangerous and inconvenient farce. This, however, let it be said, was not at all discreditable to him. Negotiations between this defendant and Thompson and Hetherington led to an agreement which resulted in McIntyre executing a bond for the appearance of Thompson and Hetherington at the then next term of the district court, there to answer to the said charge of robbery.
The two thousand dollar package of money taken from the thieves was placed in the hands of this defendant, to be held by him as security against any loss he might sustain in consequence of his becoming surety for Thompson and Hetherington. , This unbroken two thousand dollar package, however, was desired by the proper authorities in Iowa, to use in prosecuting the thieves; and it was understood and agreed between the parties at the time, that McIntyre was to surrender to the county the said unbroken package as soon as the county should place in his hands *514 the sum of fifteen hundred dollars, which was to indemnify him against loss if Thompson and Hetherington failed to appear in court and answer to the said charge of robbery. The county, subsequently, placed in the hands. of the defendant the fifteen hundred dollars, and the defendant surrendered the two thousand dollar package, according to agreement. Subsequently, the said Thompson and Hetherington appeared in the district court, as they were required to do by their bond, and the grand jury of the county ignored the charge—the district attorney of the district, to his honor be it said, declining to prosecute in such a contemptible case. This put an end to the bond which the defendant had signed, and his obligations thereon were fully discharged. The defendant then had no further risk to run. His further connection with the criminal charge of robbery, and the execution of the bond for the appearance of the accused, was absolutely at an end. He could have surrendered the money to the plaintiff without danger of further liability, except as hereinafter stated. After all this, and after the defendant had notice of the ignoring of the charge of robbery against Thompson and Hetherington, the plaintiff demanded of the defendant the surrender of the money placed in his hands for the purpose aforesaid. Before this demand was made, however, it seems that several parties in this state had commenced suit against Marion county, for alleged damages done to horses whilst in pursuit of the thieves and robbers who had plundered its treasury. Judgments were in some way entered in several of these peculiar cases, and the money was attached in the hands of this defendant to satisfy such claims.
The plaintiff gave the defendant credit for the sums so attached, and requested payment of the balance, which was refused, and this suit was brought to compel payment of the balance due. The defense was:
First—That the plaintiff had not the legal capacity to commence and maintain the suit.
Second—That the money placed in the hands of the defendant, to wit: the $ 1,500, did not belong to the plaintiff; and,
Third—Even if it did belong to the plaintiff, there was no authority for placing it in the hands of the defendant for any such purpose, and, therefore, no recovery could be had.
Trial was had on the issues found, which resulted in a verdict for the plaintiff of $ 1,5 37.10.
*515 The defendant seeks to have the judgment of the court arrested, for the same reasons relied on as matters of defense.
Marion county is one of the political subdivisions of the state of Iowa. The county was duly created by an act of the legislature of the state of Iowa, and has been organized and transacting the business pertaining to its organization for many years past. Under the laws of the state in which it is located, it can sue and be sued, and do many other things as well as individuals. This is necessary for the well being, if not for the very existence of a municipal corporation. And the several counties in Iowa, and in fact most, if not all counties in other states, possess the same rights. It is believed that authority is conferred on all of them to acquire and hold property for the convenient transaction of their lawful business. We know that it is necessary for all of them to levy and collect taxes, to furnish funds to carry on the financial affairs of the counties. All are invested with this authority. None can exist without it, and none have existed without in some way raising a revenue to meet the necessary expenses incident to the organization. This principle is universally recognized and applied. And because of this necessity, counties have conferred on them the right to sue and be sued, so that their money and other property can be fully protected. Without such a right to protect the public property, without the right to resort to the courts to correct an abuse, or redress a wrong, or maintain a right, the power and right to acquire and hold property, however useful or necessary, would be but an empty shadow. Were it otherwise, a county would be at the mercy of every scoundrel who would spoliate its treasury or embezzle its property, and get across the lines of a state before being apprehended. Can it be said that a thief who steals the money or property of one of the counties in Iowa, Missouri or Kansas, or any other state, shall find a safe place to enjoy his stolen property, if he can succeed in crossing the Missouri river with it, and finding a place in this state where he is out of reach of process, and where the same-could not be recovered back, for the alleged reason that a county cannot maintain a suit? I have seen no authorities that go to that extent, and I shall not be the first to announce such a doctrine. I will do nothing that would have such a direct tendency to convert this state into a place of sanctuary for thieves, robbers and embezzlers of public property. Of course, it is not intended to *516 apply this language to the defendant, but it shows the direct tendency and the inevitable result, if the principle contended for by the defendant’s counsel should be reduced to practice. Few, if any cases of this sort can be found. In fact, the necessity for them can but seldom arise in a law abiding community. And had there been a healthy public sentiment in the neighborhood where the parties who robbed the treasury of the plaintiff were arrested, there would have been no occasion for bringing this suit.
But the defendant insists that no recovery can be had here, for the alleged reason that the plaintiff had no right to place money in his hands for any such a purpose; that no such a payment could be made by the plaintiff and a liability be created thereby. We must bear in mind that the money belonging to the plaintiff was stolen; that it had passed beyond the reach and control of the plaintiff and its officers, without the consent or fault of either, and had found its way into the hands of other parties, where nothing but legal process could reach it. The two thousand dollar package had been placed in the hands of the defendant, without the knowledge and consent of the officers of Marion county, who had the lawful right to control it. That package was undeniably the property of the plaintiff. The possession thereof by the plaintiff, or its officers, seemed indispensable in the prosecution of the robbers. McIntyre had the package of money. He was out of reach of process issued by the Iowa courts. He was not willing to surrender the money until the plaintiff would deposit with him $1,500 in lieu thereof, to indemnify him against loss which might arise from his going on the bond of Thompson and Hetherington. This was done by the plaintiff, and afterwards the defendant was fully discharged from his liability on the bond. After that, he paid out a part of the money on suits against the county, or its agents, and the defendant received credit therefor. He received the money from the county or its representatives, to indemnify him against loss. He lost nothing, and as the money was placed in his hands to hold simply until he should be discharged on the appearance bond, it cannot, in any sense, be regarded as a payment out of the public money of the plaintiff, as claimed by the defendant. When he was released from liability on the bond, he ought to have paid back the money. He did not do so. And finally, when ap *517 pealed to by the representatives of the county, he positively refused to do so, for reasons stated in the answer. This is not as it should be. It is positively wrong. And when there is a wrong, there is usually a corresponding remedy. When there is a remedy, a court will not long hesitate about its application.
I have found no reported case, nor have I read or seen anything in the laws of man, nor have I read, or seen, or heard of anything in the laws of God that will prevent a recovery in a case like this. Reason, justice, equity, law, common sense and fair dealing, all unite in demanding a restoration of this money to the plaintiff, of which it was at first wickedly and feloniously deprived, and from which it has been long improperly and unlawfully withheld.
I conclude, that justice has been already too long delayed, and that it must be no longer impeded or interrupted.
The motion in arrest of judgment, therefore, must be overruled.
Judgment for the plaintiff on the verdict, for $i,537.10.
Dillon, C. J., took no part in deciding this case.